# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ROXANN MILLARD,

                Plaintiff,

      v.

KILOLO KIJAKAZI,

                Defendant.

CIVIL ACTION NO. 3:21-CV-01679

(MEHALCHICK, M.J.)

## MEMORANDUM

This is an action brought under 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (hereinafter, "the Commissioner") denying Plaintiff Roxann Millard ("Millard")'s claims for a period of disability and supplemental security income ("SSI") under Title II and XVI of the Social Security Act. (Doc. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge to prepare a report and recommendation pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 6). For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, the Court will reverse and remand the Commissioner's decision for further proceedings.

I. **BACKGROUND AND PROCEDURAL HISTORY**

On September 20, 2016, Millard protectively filed an application for Title II and Title XVI benefits, alleging disability beginning August 22, 2016, due to high blood pressure, back problems, arthritis, degenerative disc disease, faucet disease, depression, anxiety, migraines, asthma, chronic obstructive pulmonary disease ("COPD"), blood in her urine, kidney bleeding, ovarian cyst, endometriosis, attention deficit disorder ("ADD"), acid reflux,

anemia, and tachycardia. (Doc. 9-5, at 2). The Social Security Administration ("SSA") initially denied Millard's application January 9, 2017, prompting Millard's request for a hearing, which Administrative Law Judge ("ALJ") Daniel Balutis held on May 16, 2018. (Doc. 9-2, at 29-77). In a written opinion dated May 29, 2018, the ALJ determined that Millard is not disabled and therefore not entitled to the benefits sought. (Doc. 9-9, at 2-25). On March 21, 2019, the Appeals Council denied Millard's request for review. (Doc. 9-9, at 18).

On May 18, 2019, Millar filed complaint with the United States District Court for the Middle District of Pennsylvania. (Doc. 9-9, at 24-27). On April 13, 2020, the Court reversed and remanded the ALJ's unfavorable decision, finding that substantial evidence did not support the ALJ's unfavorable decision. *Millard v. Saul*, No. 3:19-CV-00850, 2020 WL 1849719, at *6 (M.D. Pa. Apr. 13, 2020); (Doc. 9-13, at 98-110). Pursuant to the Court's remand Order, the Appeals Council directed ALJ Balutis to consolidate Milard's claims files, associate the evidence, and issue a new decision on the consolidated claims. (Doc. ). In addition, the Appeals Council directed ALJ Balutis to offer Millard the opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision. (Doc. ). On June 2, 2021, the matter was once again heard by ALJ Balutis on June 2, 2021. (Doc. 9-8, at 34). In a written decision dated June 16, 2021, the ALJ again determined that Millard is not disabled and therefore not entitled to the benefits sought. (Doc. 9-8, at 2-25).

On September 30, 2021, Millard filed the instant action. (Doc. 1). The Commissioner responded on December 1, 2021, providing the requisite transcripts from the disability

proceedings. (Doc. 8; Doc. 9). The parties then filed their respective briefs, with Millard alleging five errors warranting reversal or remand. (Doc. 12; Doc. 17; Doc. 18).

II.   **STANDARD OF REVIEW**

In order to receive benefits under Title II or Title XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment[1] that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). Additionally, to be eligible to receive benefits under Title II of the Social Security Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

A.   **ADMINISTRATIVE REVIEW**

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed

---

[1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

impairment;[2] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 404.1512(a); 20 C.F.R. § 416.912(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f) ; 20 C.F.R. § 416.912(f).

B. JUDICIAL REVIEW

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is

---

[2] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1 (effective June 12, 2015, through July 19, 2015).

less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before the Court, therefore, is not whether Millard is disabled, but whether the Commissioner's finding that Millard is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

III.   **THE ALJ'S DECISION**

In a decision dated June 16, 2021, the ALJ determined Millard "has not been under a disability, as defined in the Social Security Act, from August 22, 2016, through the date of

this decision." (Doc. 9-8, at 25). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a). The ALJ determined that Millard meets the insured status requirements of the Social Security Act through June 30, 2024. (Doc. 9-8, at 8).

### A. STEP ONE

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R § 404.1520(a)(4)(i); 20 C.F.R. § 416.920(a)(4)(i). If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(b). SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. § 404.1572; 20 C.F.R. § 416.972. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574; 20 C.F.R. § 416.974. Here, the ALJ determined Millard "has not engaged in [SGA] since August 22, 2016, the alleged onset date." (Doc. 9-8, at 8). Thus, the ALJ's analysis proceeded to step two.

### B. STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits [their] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore not disabled." 20 C.F.R. § 1520(c); 20 C.F.R. § 416.920(c). If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step. Here, the ALJ found that the medical

- 6 -

evidence of record established the presence of the following medically determinable severe impairments: "essential hypertension, lumbar degenerative disc disease, cervical stenosis, asthma, and [COPD]." (Doc. 9-8, at 8). The ALJ also noted non-severe impairments of: iron deficiency anemia, acne, vulvar lesion, left eye pain, anxiety, and depression. (Doc. 9-8, at 8).

C.   STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii); 404.1525; 404.1526; 20 C.F.R. §§ 416.920(a)(4)(iii); 416.925; 416.926. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 416.920(d). Otherwise, the ALJ must proceed to the fourth step of the analysis. Here, the ALJ determined that none of Millard's impairments, considered individually or in combination, met or equaled a Listing. (Doc. 9-8, at 12). Specifically, the ALJ considered Listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)); 3.02 (chronic respiratory disorders); and 3.03 (asthma). (Doc. 9-8, at 12-13).

D.   RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the medical evidence provided. The ALJ found that while Millard's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Millard's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and

other evidence in the record. (Doc. 9-8, at 16). The ALJ then went on to detail Sherman's

medical records and treatment history. (Doc. 9-8, at 16-24).

Considering all evidence in the record, the ALJ determined that Millard had the RFC

"to perform medium work as defined in 20 C.F.R. 404.1567(c) and 20 CFR 416.967(c),"

subject to the following non-exertional limitations:

> [Millard] is limited to occasional balancing and climbing of ladders, ropes, and
> scaffolds, and frequent stooping, kneeling, crouching, crawling, and climbing
> of ramps and stairs. [Millard] is limited to frequent overhead reaching with her
> bilateral upper extremities, and she can have frequent exposure to moving
> mechanical parts, extreme heat, and vibration. She is capable of occasional
> exposure to unprotected heights, humidity, wetness, dusts, odors, fumes,
> pulmonary irritants, and cold.

(Doc. 9-8, at 13-14).

E.  STEP FOUR

Having assessed a claimant's RFC, at step four the ALJ must determine whether the

claimant had, during the relevant period, the RFC to perform the requirements of their past

relevant work. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 416.920(a)(4)(iv). A finding that

the claimant can still perform past relevant work requires a determination that the claimant is

not disabled. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 416.920(a)(4)(iv). Past relevant work

is defined as work the claimant has done within the past 15 years, that was substantial gainful

activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. §

404.1560(b); 20 C.F.R. § 416.960(b). If the claimant cannot perform past relevant work or has

no past relevant work, then the analysis proceeds to the fifth step. 20 C.F.R. § 404.1565; 20

C.F.R. § 416.965. The ALJ considers whether the claimant retains the capacity to perform

the particular functional demands and job duties of the past relevant work, either as the

claimant actually performed the work or as ordinarily required by employers throughout the

- 8 -

national economy. *Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform his [or her] past relevant work despite his [or her] limitations, he [or she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). Here, the ALJ determined that Millard has no past relevant work. (Doc. 9-8, at 24). Thus, the ALJ proceeded to step five of the sequential analysis.

F.  STEP FIVE

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 416.920(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. § 404.1560(b)(3); 20 C.F.R. § 416.960(b)(3). If a claimant has the ability to make an adjustment to other work, they will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 416.920(a)(4)(v). Here, the ALJ made vocational determinations that Millard was 51 years old on the alleged onset date, which is defined as an individual closely approaching advanced age by the Regulations. 20 C.F.R. § 404.1563; 20 C.F.R. § 416.963; (Doc. 9-8, at 24). However, the ALJ made the vocational determination that Millard subsequently changed age category to advanced age. 20 C.F.R. § 404.1563; 20 C.F.R. § 416.963; (Doc. 9-8, at 24). The ALJ also noted that Millard "has at least a high school education." 20 C.F.R. § 404.1564; 20 C.F.R. § 416.964; (Doc. 9-8, at 24). The ALJ determined that upon consideration of these factors, Millard's RFC, and the testimony of a vocational expert ("VE"), "there are jobs that exist in significant numbers in the national economy that the claimant can perform." 20 C.F.R. §§ 404.1569, 404.1569(a); 20 C.F.R. §§ 416.969, 416.969(a). (Doc. 9-8, at 24). The ALJ specifically identified occupations of floor cleaner, porter, and laborer, which are

occupations with open positions ranging from 45,000 to 50,000 nationally. (Doc. 9-8, at 25). As a result of this analysis, the ALJ determined that Millard is not disabled and denied Millard's applications for benefits. (Doc. 9-8, at 25).

IV. **DISCUSSION**

Millard advances five main arguments on appeal. First, Millard argues that the ALJ erred in formulating an RFC for Millard that was based on the opinion of consultative examiner, Melita Konecke M.D. ("Dr. Konecke"). (Doc. 12, at 7). Second, Millard asserts the opinions of Dr. Konecke regarding Millard's limitations do not allow for medium exertional work. (Doc. 12, at 12). Third, Millard contends that the ALJ erroneously found that Millard's mental health impairments non-severe. (Doc. 12, at 13). Fourth, Millard argues that the ALJ erred in failing to evaluate Millard's testimony concerning the impact her COPD and high blood pressure have on her ability to work. (Doc. 12, at 15). Fifth, Millard asserts that the decision of the ALJ and Appeals Council is constitutionally defective because those judges derived their authority from Commissioner Saul whose appointment violated separation of powers. (Doc. 12, at 17). In opposition, the Commissioner asserts that "the ALJ properly evaluated the *entire* record in formulating [Millard]'s RFC, as evidenced in his thorough, 21-page decision. Where the ALJ's RFC assessment is supported by substantial evidence – as it was here – the ALJ's determination must be upheld." (Doc. 17, at 2).

A. THE ALJ DID ERR IN HIS MEDIUM WORK DETERMINATION.

First, Millard asserts the ALJ's determination that he could perform medium work is not supported by substantial evidence because "[t]he only partial support for the ALJ's finding that [Millard] can perform medium work is from the consultative examiner, [Dr. Konecke]." (Doc. 12, at 8). Millard argues that the ALJ "ignored the opinions of numerous medical

providers" and that "[t]he only partial support for the ALJ's finding that [Millard] can perform medium work is from the consultative examiner, [Dr. Konecke]." (Doc. 12, at 8). Further, Millard contends that the opinion of Dr. Konecke is not based on the evidence of record and is outweighed by the other medical opinions of record, including consultative medical examiner Greg Grabon, M.D. ("Dr. Grabon"), and state agency medical consultants Michael Lombard, M.D. ("Dr. Lombard"), L. Antone Raymundo, M.D. ("Dr. Raymundo"), and Louis Tedesco, M.D. ("Dr. Tedesco"). (Doc. 12, at 9-10). In opposition, the Commissioner asserts that Millard's arguments should fail as a matter of law because "the ALJ properly considered the *entire* record when assessing [Millard]'s RFC and he evaluated the opinions of the state agency physicians and consultative examiner, [Dr. Grabon], in accordance with the regulations." (Doc. 17, at 22)

Assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. §§ 404.1546(c), 416.946(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the most that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; 20 C.F.R. §§ 416.920, 416.945; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by the medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir.

- 11 -

1986). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018). Applying this standard to the present record, the Court finds substantial evidence does not support the ALJ's RFC determination.

In *Cotter v. Harris*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." 642 F.2d 700, 704, 706-707 (3d Cir. 1981). However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g., Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

In making the RFC determination, "the ALJ must consider all evidence before him" and "evaluate every medical opinion . . . receive[d]." *Burnett*, 220 F.3d at 121 (citations omitted); 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c); *see also Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) ("The Secretary must 'explicitly' weigh all relevant, probative and available evidence. . . . The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects."). The Social Security Regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s),

including . . . symptoms, diagnosis and prognosis, what [the claimant] can still do despite [his or her] impairment(s), and … physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); 20 C.F.R. § 416.927(a)(1). Social Security Ruling ("SSR") 96-5p further clarifies that "opinions from any medical source on issues reserved to the Commissioner must never be ignored," and specifically states that the ALJ's "decision must explain the consideration given to the treating source's opinion(s)."[3] SSR 96-5p, 1996 WL 374183, at *3, *6 (July 2, 1996).

In deciding what weight to accord competing medical opinions, the ALJ is guided by factors outlined in 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c). Where no medical opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinion: (1) the examining relationship; (2) the treatment relationship, including its length and nature; (3) the supportability of the medical source's opinions; (4) consistency; (5) specialization; and (6) other relevant factors. 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c)(2); *see also* SSR 96-6p, 1996 WL 374180 at *2 ("The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."). Further, 20 C.F.R. § 404.1527(c)(2) and 20 C.F.R. § 416.927(c)(2) require that the Commissioner "will always give good reasons in [his] notice of determination or decision for the weight [he] gives to [a claimant's] treating source's opinion." *See also Cotter*, 642 F.2d at 704 (finding the ALJ's articulation of the weight accorded

---

[3] SSRs are agency rulings published under the authority of the Commissioner and are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1). SSRs do not have the force and effect of the law or regulations but are to be "relied upon as precedents in determining other cases where the facts are basically the same." *Heckler v. Edwards*, 465 U.S. 870, 873, n.3 (1984).

to each medical opinion must be accompanied by "a clear and satisfactory explication of the basis on which it rests."). "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). As such, to allow for meaningful judicial review, it is the duty of the ALJ to explain the rationale for the weight afforded. *Plummer*, 186 F.3d at 429; *Burnett*, 220 F.3d at 119.

Here, the ALJ found that Millard has the RFC to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) subject to certain non-exertional limitations. (Doc. 9-8, at 13). "Medium work requires lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c); 20 C.F.R. § 416.967(c). SSR 83-10 notes that "[b]eing able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time." SSR 83-10, 1983 WL 31251, at *6. " 'Frequent' means occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251, at *6.

In making the RFC determination, the ALJ considered Millard's symptoms and "the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," including opinion evidence. (Doc. 9-8 at 14). The ALJ gave "great weight" to the opinions of Dr. Konecke. (Doc. 9-8, at 22). The ALJ stated Dr. Konecke reported Millard could occasionally lift fifty pounds; continuously lift and carry twenty pounds; sit for four hours uninterrupted for up to eight hours; stand for three hours for up to six hours; walk for two hours for up to five hours in an eight-hour workday; and frequently reach overhead with her bilateral upper extremities, with no other limitations in

- 14 -

reaching, handling, fingering, feeling, or push/pull activities. (Doc. 9-8, at 21-22). Furthermore, the ALJ stated Dr. Konecke noted that Millard did not require an assistive device for ambulation, but had postural and environmental limitations. (Doc. 9-8, at 22). The ALJ explained that "imaging of [Millard]'s cervical spine showed mild central stenosis and moderate left and mild right foraminal stenosis, thereby supporting Dr. Konecke's opined limitations regarding [Millard]'s use of her upper extremities." (Doc. 9-8, at 22). In addition, the ALJ explained that "[Millard]'s lumbar spine revealed mild multilevel degenerative change most significant at L2-L3, thus supporting Dr. Konecke's opined postural and exertional limitations." (Doc. 9-8, at 22). Lastly, the ALJ found that "physical exams revealed [Millard]'s lungs were clear to auscultation with some instances of wheezing, but no rhonchi or rales." (Doc. 9-8, at 22). However, The ALJ did not discuss or acknowledge Dr. Konecke's conclusions that Millard could never carry more than twenty-one pounds and he did not explain how the assessed limitation allowed Millard to do medium work, which requires the ability to frequently carry up to twenty-five pounds. (Doc. 9-13, at 521); 20 C.F.R. § 404.1567; 20 C.F.R. § 416.967.

Notably, Dr. Konecke's opinion is the only opinion of record accorded great weight with respect to Millard's physical impairments. The ALJ afforded the opinions of Dr. Grabon that Millard could occasionally lift and carry twenty pounds and frequently lift and carry ten pounds "some weight." (Doc. 9-8, at 21). The ALJ explained that "physical exams showed [Millard] exhibited wheezing, thus supporting Dr. Grabon's opined environmental limitations to some extent." (Doc. 9-8, at 21). However, the ALJ stated that "physical exams also revealed [Millard]'s strength was 5/5 throughout and her gait was normal." (Doc. 9-8, at 21). Thus, the ALJ found that "the record supports a finding for work at the medium

- 15 -

exertion level and that Dr. Grabon overestimated [Millard]'s limitations in lifting and carrying weight, as well as sitting, standing, and walking." (Doc. 9-8, at 21). However, the ALJ did not articulate why 5/5 strength and normal gait would lead to a conclusion that Dr. Grabon overestimated physical limitations.

Next, the ALJ afforded the opinions of Dimple Tejwani, M.D. ("Dr. Tejwani"), "little weight." (Doc. 9-8, at 22). The ALJ noted that Dr. Tejwani opined in April 2021 that Millard should use Occupational Safety and Health Administration-required personal protective equipment in regards to environmental restrictions. (Doc. 9-8, at 22). The ALJ found that Dr. Tejwani "overestimated [Millard]'s pulmonary limitations necessitating the use of personal protective equipment" because "physical exams revealed [Millard]'s lungs were clear to auscultation with some instances of wheezing, but no rhonchi or rales." (Doc. 9-8, at 22).

Lastly, the ALJ afforded these opinions of state agency physicians Dr. Lombard, Dr. Raymundo, and Dr. Tedesco that Millard could occasionally lift and carry twenty pounds and frequently lift and carry ten pounds "some weight." (Doc. 9-8, at 22). The ALJ explained that "medical records indicate [Millard] was prescribed an inhaler and nebulizer for treatment of her asthma, thereby supporting Dr. Lombard's, Raymundo's, and Tedesco's opined environmental limitations." (Doc. 9-8, at 22). However, the ALJ found that the record supported a medium rather than light exertional level is warranted, considering, in part, the examinations documenting normal strength in the bilateral upper and lower extremities and normal sensation. (Doc. 9-8, at 22). In addition, the ALJ found that "based on the record as a whole, including [Millard]'s testimony," Millard "is capable of frequent postural maneuvers, further agreeing with Dr. Raymundo's and Tedesco's opined limitations in some respects." (Doc. 9-8, at 22).

Given the ALJ's reliance on Dr. Konecke's opinion and the definition of medium work, the Court cannot conclude the ALJ's RFC assessment is supported by Dr. Konecke's opinion. The Commissioner's argument that Dr. Konecke's opinion supports the ALJ because Dr. Konecke found Millard could occasionally lift up to fifty pounds, which is consistent with medium work, does not address the medium work requirement of frequent carrying of objects weighing up to twenty-five pounds. 20 C.F.R. § 404.1567(c); 20 C.F.R. § 416.967(c); (Doc. 9-8, at 21). The requirement to carry objects weighing up to twenty-five pounds is not consistent with Dr. Konecke's opinion that Millard could only carry up to twenty pounds continuously and never carry objects weighing more than twenty-one pounds, which SSR 83-10 explains is "often more critical" than the fifty-pound consideration. 1983 WL 31251, at *6; (Doc. 9-8, at 21; Doc. 9-13, at 521). Thus, had the ALJ adopted Dr. Konecke's restriction of never carrying more than twenty pounds, Millard would have been precluded from medium work and limited to only light work. *See* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds"); 20 C.F.R. § 416.967(b) (same); *see also Ray v. Berryhill,* No. 1:18-CV-00567, 2018 WL 7821004, at *6 (M.D. Pa. Dec. 21, 2018), *report and recommendation adopted,* 2019 WL 1299269 (M.D. Pa. Mar. 21, 2019) (remanding ALJ's unfavorable decision where ALJ omitted medical opinion's limitation that claimant could never carry more than twenty pounds); *see Reitz v. Berryhill*, No. 3:18-CV-921, 2018 WL 5113167, at *7 (M.D. Pa. Oct. 19, 2018) (remanding ALJ's unfavorable decision where ALJ failed to discuss twenty-pound arm lifting restriction assessed by examining sources).

It is well-settled that the "ALJ is free to accept some medical evidence and reject other evidence, provided that he provides an explanation for discrediting the rejected evidence."

*Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014) (citing *Adorno*, 40 F.3d at 48). Here, The ALJ afforded great weight to the opinions of Dr. Konecke because "imagine of [Millard]'s cervical spine showed mild central stenosis and moderate left and mild right foraminal stenosis, thereby supporting Dr. Konecke's opined limitations regarding t[Millard]'s use of her upper extremities." (Doc. 9-8, at 22). However, the ALJ gave no explanation for the omission of Dr. Konecke's limitation that Millard could never carry more than twenty pounds. The Commissioner's assertion that the opinions of Dr. Grabon, Dr. Lombard, Dr. Raymundo, and Dr. Tedesco support medium work does not address the ALJ's assignment of limited weight to those opinions. (Doc. 17, at 26-27).

Moreover, more of an explanation was required because the discrepancy between Dr. Konecke's carrying restrictions and the ALJ's proposed restrictions is dispositive of the disability determination. The ALJ restricted Millard to medium work, which requires "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c); 20 C.F.R. § 416.967(c). Thus, had the ALJ adopted Dr. Konecke's restriction of never carrying more than twenty pounds, Millard would have been precluded from medium work and limited to only light work. *See* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds"); 20 C.F.R. § 416.967(b) (same). Accordingly, if Millard had been limited to light work, the Medical Vocational Rules would have required a finding that Millard was disabled, as she had a high school education, was of advanced age on the alleged onset date, and was limited to unskilled work with no transferable skills. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 203.15; *see also Sykes v. Apfel*, 228 F.3d, 259, 263

- 18 -

(3d Cir. 2000) ("When the four factors in the claimant's case correspond exactly with the four factors set forth in the grids, the ALJ must reach the result the grids reach").

On this score, the Court finds that the ALJ's determination that Millard could perform medium work is not supported by substantial evidence. The discussion of the evidence was not sufficient to permit meaningful judicial review of the ALJ's decision. *See Barnett*, 220 F.3d at 120 (holding that there could be no meaningful judicial review where the ALJ did not "discuss[ ] the evidence" or explain the reasoning behind the determination). The ALJ did not explain why he disregarded the limitations in the opinions of Dr. Konecke, and there is no evidence in the record to support the ALJ's proposed carrying limitation. For this reason, this case shall be remanded. Upon remand, the distinction between finding Millard capable of medium work and light work and Millard's carrying ability warrants further consideration and detailed discussion.

B. THE COURT DECLINES TO ADDRESS MILLARD'S REMAINING ARGUMENTS.

Because the Court finds that the ALJ's decision must be vacated based on his failure to include carrying limitations present in Dr. Konecke's medical opinion, the Court declines to address Millard's remaining arguments. "A remand may produce different results on these claims, making discussion of them moot." *Burns v. Colvin*, 156 F.Supp.3d 579, 598 (M.D. Pa. 2016). The Court's evaluation of Millard's additional contentions could be futile given that the ALJ's reconsideration of the RFC may yield a different result.

V.   **CONCLUSION**

Based on the foregoing, the Court will **REVERSE** and **REMAND** the Commissioner's decision to filly develop the record, conduct a new administrative hearing if necessary, and appropriately evaluate the evidence pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.


**Dated: August 18, 2022**                    *s/* *Karoline Mehalchick*
                                              **KAROLINE MEHALCHICK**
                                              **Chief United States Magistrate Judge**